UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENRIQUE ORTIZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MARMOLEGO,<br><br>　　　　Defendant. | Case No.: 1:13-cv-00959-DAD-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT MARMOLEGO'S MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>[ECF Nos. 28, 37] |

Plaintiff Enrique Ortiz is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

**I.**

**RELEVANT HISTORY**

This action is proceeding against Defendant Marmolego for cruel and unusual punishment in violation of the Eighth Amendment.

Defendant Marmolego filed an answer to the complaint on July 28, 2014, and the Court issued a discovery and scheduling order on July 29, 2014. (ECF Nos. 20, 21.)

///

///

///

///

On July 8, 2015, Defendant filed a motion for summary judgment.  (ECF No. 28.)  Plaintiff filed an opposition on July 20, 2015,[1] and Defendant filed a reply on July 27, 2015.  (ECF Nos. 32, 35.)

On August 5, 2015, Plaintiff filed a sur-reply.  (ECF No. 36.)  On August 10, 2015, Defendant filed a motion to strike Plaintiff's sur-reply.  (ECF No. 37.)

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case.  In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial."  In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323).  This requires Plaintiff to "show more than the mere

---

[1] Plaintiff's claim that Defendant failed to produce a complete copy of the deposition transcript is unfounded as Defendant submitted a complete copy of a deposition transcript in paper form which was received on July 10, 2015.  (ECF No. 29.)

2

existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).  The Court determines *only* whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

## III.

## DISCUSSION

### A. Defendant's Motion to Strike Plaintiff's Sur-reply

Parties do not have the right to file surreplies and motions are deemed submitted when the time to reply has expired.  Local Rule 230(*l*).  The Court generally views motions for leave to file a surreply with disfavor.  Hill v. England, No. CVF05869 REC TAG, 2005 WL 3031136, at *1 (E.D. Cal. 2005) (citing Fedrick v. Mercedes-Benz USA, LLC, 366 F.Supp.2d 1190, 1197 (N.D. Ga. 2005)).  However, district courts have the discretion to either permit or preclude a surreply.  See U.S. ex rel. Meyer v. Horizon Health Corp., 565 F.3d 1195, 1203 (9th Cir. 2009) (district court did not abuse discretion in refusing to permit "inequitable surreply"); JG v. Douglas County School Dist., 552 F.3d 786, 803 n.14 (9th Cir. 2008) (district court did not abuse discretion in denying leave to file surreply where it did not consider new evidence in reply); Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996) (new evidence in reply may not be considered without giving the non-movant an opportunity to respond).

Although Plaintiff does not have a right to file a sur-reply, in this instance the Court will exercise its discretion and consider the sur-reply in ruling on Defendant's motion for summary judgment.  Accordingly, Defendant's motion to strike the filing of the sur-reply should be denied.

**B.     Allegations Set forth in Complaint**

Plaintiff alleges that while he was incarcerated at Avenal State Prison (ASP), Defendant Marmolejo sexually harassed Plaintiff when he passed through the B-Facility work change. Plaintiff alleges specifically that on January 28, 2013, Defendant Marmolejo touched him on the back and made derogatory comments towards him, and joked about his genitalia.

**C.     Statement of Undisputed Facts[2]**

1. At 7:00 a.m. each day, Plaintiff was required to report to the B-Facility work change in order to attend his vocational classes. (Declaration of Erick J. Rhoan, Ex. A, Deposition of Plaintiff (Plaintiff Depo.) at 31:4-8; Declaration of M. Marmolejo (Marmolejo Decl.), ¶ 13.)

2. Classes would last approximately three hours and Plaintiff would be released at 10:00 a.m. (Pl. Dep. at 31:9-11; Marmolejo Decl. ¶ 13.)

3. When Plaintiff's vocational program was over, he would re-enter the work change, undergo an unclothed body search, and then exit the work change and go back to his housing unit. (Pl. Dep. at 31:12-17.)

4. Plaintiff did not pass through the work change again on that day. (Pl. Dep. 33:9-18.)

5. Unclothed body searches occur when inmates are returning to general population from vocational programs. (Marmolejo Decl. ¶ 6.)

6. In these instances, inmates are required to completely disrobe so that correctional staff can visually inspect the inmate's body. (Marmolejo Decl. ¶¶ 6, 8; Ex. A.)

7. This includes having the inmate turn away from the correctional staff to allow inspection of the inmate's back, buttocks, thighs, toes, and bottom of the feet. (Id.)

8. A metal table separates the inmate and the correctional officer conducting the unclothed body search. (Pl. Dep. at 37:24-38:9; Marmolejo Decl. ¶ 9.)

---

[2] Plaintiff neither filed his own separate statement of disputed facts nor admitted or denied the facts set forth by Defendant as undisputed. Local Rule 56-260(b). Therefore, Defendant's statement of undisputed facts is accepted except where brought into dispute by Plaintiff's verified complaint and opposition. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

9. Inmates also place their personal belongings on this table while the search is being conducted. (Id.)

10. Lastly, staff shall visually inspect the inmate's anal area by having the inmate bend over, spread the check of their buttocks, and cough. (Marmolejo Decl. ¶¶ 6, 8; Ex. A.)

11. This is commonly referred to as the "squat-and-cough" procedure. (Marmolejo Decl. ¶ 8.)

12. Both Plaintiff and Defendant agree that the purpose of conducting these searches at the B-Facility work change is to ensure that inmates do not smuggle contraband items into the housing units and other yards from the vocational programs. (Pl. Dep. at 41:1-24; Marmolejo Decl. ¶¶ 4-5.)

13. Once the inmate successfully completes the squat-and-cough procedure, the inmate is allowed to leave the work change. (Marmolejo Decl. ¶ 10.)

14. If an inmate does not perform the procedure correctly, the officer will order the inmate to repeat it again until he performs it correctly. (Marmolejo Decl. ¶ 24.)

15. Inmates are not allowed to set the pace of the search. (Marmolejo Decl. ¶ 24.)

16. It is not uncommon occurrence to repeatedly order an inmate to repeat the squat-and-cough procedure because the inmate is attempting to rush the process. (Marmolejo Decl. ¶ 24.)

17. Plaintiff's unclothed body search was conducted by Defendant Marmolejo, who was assigned to the work change at that time. (Marmolejo Decl. ¶ 2.)

18. Plaintiff disrobed completely and placed all of his clothes on a metal table at the work change. (Pl. Dep. at 44:10-23.)

19. Plaintiff did not perform the squat-and-cough procedure correctly, resulting in Defendant Marmolejo ordering him to bend over again, and placed his hand on Plaintiff's back. (Pl. Dep. at 45:9-17.)

20. Plaintiff protested but Defendant Marmolejo ordered him to spread his buttocks again because he could not see into Plaintiff's body. (Pl. Dep. at 45:18-46:11; 47:5-11.)

5

| | | |
|---|---|---|
| 1 | 21. | Defendant Marmolejo joked about Plaintiff's penis and made several derogatory phrases to Plaintiff.  (Pl. Dep. at 45:24-46:11.) |
| 3 | 22. | Defendant Marmolejo told Plaintiff, "Fuck you."  (Pl. Dep. at 47:12-22.) |
| 4 | 23. | Defendant Marmolejo told Plaintiff, "Get the fuck out of here."  (Pl. Dep. at 48:8-17.) |
| 5 | 24. | Defendant Marmolejo told Plaintiff he had a "round nice ass."  (Pl. Dep. at 49:12-17.) |
| 6 | 25. | Plaintiff performed the squat-and-cough procedure correctly and was allowed to get dressed, and leave the work change.  (Pl. Dep. at 49:5-11.) |
| 8 | 26. | Plaintiff alleges no other physical contact occurred.  (Pl. Dep. at 49:24-50:3.) |
| 9 | 27. | Plaintiff alleges that Defendant Marmolejo did not say anything else to him.  (Pl. Dep. at 48:2-49:4.) |
| 11 | 28. | According to Plaintiff, the search lasted approximately four minutes.  (Pl. Dep. at 49:2-4.) |
| 13 | 29. | Plaintiff suffered no physical injury as a result of the January 28, 2013 unclothed body search.  (Pl. Dep. at 53:18-24; 54:23-55:1.) |
| 15 | 30. | Plaintiff alleges that he only suffered emotional trauma, fear, and distress.  (Pl. Dep. at 53:18-24; 54-23-55:1.) |
| 17 | 31. | The B-Facility work change is the only port of entry between the B-Facility housing units and vocational programs, which includes educational classes, vocational classes, or other activities.  (Marmolejo Decl. ¶ 5.) |
| 20 | 32. | When inmates enter the work change from their respective yards, they do not remove their clothing.  (Pl. Dep. at 39:2-23; 40:8-17; Marmolejo Decl. ¶ 7.) |
| 22 | 33. | Instead, inmates pass through a metal detector.  (Pl. Dep. at 39:2-23; 40:8-17; Marmolejo Decl. ¶ 7.) |
| 24 | 34. | When they do so, they state their CDCR inmate numbers and identities to the work change officer who mans a booth adjacent to the metal detector.  (Pl. Dep. at 38:15-20; Marmolejo Decl. ¶ 7.) |

///

///

| | | |
|---|---|---|
|1|35.|After vocational programs end at 10:00 a.m., the inmates proceed back through the work change where they undergo unclothed body searches. (Pl. Dep. at 43:10-44:1; Marmolejo Decl. ¶ 13.)|
|4|36.|The B-Facility work change is a high-traffic area, often seeing hundreds of inmates entering and exiting each day. (Marmolejo Decl. ¶ 12.)|
|6|37.|There are times when inmates come through the work change in one mass movement, which requires several officers to search multiple inmates at once. (Marmolejo Decl. ¶ 12.)|
|9|38.|Other times, inmates trickle through one or a few at a time, between scheduled events. (Marmolejo Decl. ¶ 12.)|
|11|39.|The unclothed body searches that are conducted as each inmate exits the work change, on average, last two minutes or less. (Marmolejo Decl. ¶ 12.)|
|13|40.|Plaintiff's only access to his vocational program was through the B-Facility work change. (Pl. Dep. at 34:7-14; 36:25-37:5; 37:13-16.)|
|15|41.|On certain occasions, Defendant Marmolejo admonished Plaintiff for being late to the work change and for being late for his vocational classes. (Pl. Dep. at 18-23; Marmolejo Decl. ¶¶ 15-16.)|
|18|42.|Plaintiff only sought psychiatric help for "emotional trauma and fear." (Pl. Dep. at 54:23-55:1.)|
|20|43.|Plaintiff received no pain medication, only an adjustment to his psychiatric medications. (Pl. Dep. at 55:21-56:6.)|

**D.  Strip Search**

A prison official violates the Eighth Amendment's proscription of cruel and unusual punishment where he or she deprives a prisoner of the minimal civilized measure of life's necessities with a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994). "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Jordan v. Gardner, 986 F.2d 1521, 1525 (9th Cir.

7

1993) (en banc) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986) (internal quotation marks and indications of alteration omitted).

Although inmates, have a "limited right to bodily privacy," Michenfelder v. Sumner, 860 F.2d 328, 333 (9th Cir. 1988), the Eighth Amendment protects inmates from repetitive and harassing searches, and from sexual abuse, Schwenk v. Hartford, 204 F.3d 1187, 1196-1197 (9th Cir. 2000). The Ninth Circuit has recognized that digital rectal searches are highly intrusive and humiliating. Tribble v. Gardner, 860 F.2d 321, 324 (9th Cir. 1998). Prisoners thus have a clearly established right to be free from digital rectal searches conducted for purposes unrelated to legitimate penological concerns. Tribble, 860 F.2d at 325-327. A digital rectal search may violate the Eighth Amendment if it is not reasonably related to any legitimate penological concerns. Id. at 325 n. 6. The Ninth Circuit has also held that, under limited circumstances, a bodily search involving intimate touching may inflict psychological pain sufficient to implicate the Eighth Amendment even in the absence of sexual assault. In Jordan v. Gardner, the Ninth Circuit held that a prison policy requiring male guards to conduct frequent random clothed body searches of female inmates constituted cruel and unusual punishment when the policy was adopted despite the warnings of prison psychologists that the intrusive searches would severely traumatize inmates, many of whom had pre-incarceration histories of sexual abuse by men. Jordan, 986 F.2d at 1523-1531.

The Supreme Court has held that visual body cavity searches performed to prevent prisoners' possession of weapons and contraband are reasonable, even in the absence of probable cause. Bell, 441 U.S. at 558-560. In addition, the Ninth Circuit has held that visual body cavity searches "involving no touching" are reasonable. Michenfelder, 860 F.2d at 332. "The prisoner bears the burden of showing that prison officials intentionally used exaggerated or excessive means to enforce security in conducting a search." Thompson v. Souza, 111 F.3d 694, 700 (9th Cir. 1997).

"Although the Ninth Circuit has recognized that sexual harassment may constitute a cognizable claim for an Eighth Amendment violation, the Court has specifically differentiated between sexual harassment that involves verbal abuse and that which involves allegations of physical assault, finding [only] the later to be in violation of the constitution." Minifield v. Butikofer, 298 F.Supp.2d 900, 904 (N.D. Cal. 2004) (citing Schwenk v. Hartford, 204 F.3d at 1198.)

If the sexual harassment claim is based on brief inappropriate touching by a correctional official it is generally found to be noncognizable, especially if the alleged touching took place pursuant to an authorized search. "Even if plaintiff believed that there was a sexual aspect to the search, more is needed." Smith v. Los Angeles County, No. CV 07-7028-VAP (MAN), 2010 WL 2569232, *5 (C.D. Cal. 2010); adopted in full 2010 WL 2572570 (C.D. Cal. 2010); aff'd 452 Fed. Appx. 768 (9th Cir. 2011).

**E.     Discussion**

1.     Merits of Claim

Although Defendant denies making any demeaning comments to Plaintiff on January 28, 2013, and does not recall touching Plaintiff on this date during the search, he assumes the truth of such contentions in moving for summary judgment and argues Plaintiff's claim fails as a matter of law. Defendant Marmolejo argues that even assuming the truth of Plaintiff's allegations, Marmolejo's conduct during the strip search does not give rise to an Eighth Amendment violation because it was authorized under CDCR policy to maintain prison security and the search was not part of an egregious, pervasive, or widespread pattern of harassment. In the alternative, Defendant Marmolejo argues he is entitled to qualified immunity because it would not have been clear to reasonable officials that Defendant Marmolejo's actions were unconstitutional.

Defendant Marmolejo declares (and Plaintiff does not dispute) that the purpose of conducting unclothed body searches on inmates as they pass through the work change is to prevent the spread of contraband materials that inmates may bring into the housing units or other yards. (Marmolejo Decl. ¶ 4.) Pursuant to the CDCR Department of Operations Manual (DOM), unclothed body searches are authorized when inmates are returning to general population from areas such as vocational programs, as in this case. (Id. ¶ 6.) The B-Facility work change is the only port of entry between B-Facility inmates' housing units and the B-Facility vocational programs, which can include educational classes, vocational classes, or other activities. (Id. ¶ 5.) In an effort to prevent the spread of contraband that may change hands in the vocational programs, all inmates who leave their vocational programs must pass through the work change and undergo an unclothed body search. (Id.) Inmates are only subject to the unclothed body search when they leave their vocational programs, not when they first enter. (Id.

1  ¶ 7.) When an inmate enters the work change from their housing units, he/she must pass through a
2  metal detector while leaving their clothes on. (Id.)
3        Defendant Marmolejo declares that when conducting an unclothed body search, he visually
4  inspects the inmate's body to ensure that the inmate is not attempting to smuggle contraband out of the
5  vocational programs. (Id. ¶ 8.) Part of the search involves ordering the inmate to turn away from the
6  officer and conducting a visual inspection of the inmate's back, buttocks, thighs, toes, and bottom of
7  the feet. (Id.) The inmate is also ordered to bend over, spread his buttocks and cough to visually
8  inspect the inmate's anal area. (Id.) If an inmate does not properly perform the squat-and-cough
9  procedure, Defendant Marmolejo would require him to repeat the procedure to ensure the inmate was
10 not attempting to smuggle contraband by using his bodily cavities. (Id. ¶ 20.) Strip searches, on
11 average, last about two minutes or less. In this case, Plaintiff acknowledged that his own strip search
12 lasted approximately four minutes as a result of Plaintiff having to repeat the squat-and-cough process.
13 (Pl.'s Dep. at 49.)
14       It is undisputed that Plaintiff's anal cavity was not penetrated during the search on January 28,
15 2013, and the penological justification in facilitating the search to maintain the safety and security of
16 the prison facility was high.
17       Defendant Marmolejo recalls that sometime in January or February 2013, Plaintiff was given
18 two or three orders to properly spread his buttocks in order to properly complete the unclothed body
19 search. (Marmolejo Decl. ¶ 23.) Defendant Marmolejo declares that Plaintiff was merely touching his
20 own buttocks without separating them, and he was giving a very faint cough. (Id.)
21       Plaintiff alleges that Defendant Marmolejo made several remarks during the unclothed body
22 search. Specifically, Defendant Marmolejo allegedly: (1) joked about Plaintiff's genitalia; (2) said
23 "Fuck you" to Plaintiff; (3) said to Plaintiff "Get the fuck out of here"; and (4) stated that Plaintiff had
24 a "round nice ass."
25       In Watison v. Carter, 668 F.3d 1108, 1112-1114 (9th Cir. 2012), the Ninth Circuit found that
26 the inmate (Watison) failed to state a sexual harassment claim under the Eighth Amendment based on
27 allegation that the correctional officer entered Watison's cell while he was using the toilet and began
28 to search it. When Watison asked the officer to leave, the officer approached Watison who was still

1   on the toilet, rubbed his thigh against Watison's thigh, then smiled in a sexual manner and left the cell
2   laughing. Under these circumstances, it was held that "[t]he 'humiliation' Watison allegedly suffered
3   from the incident with [the officer] does not give rise to the level of severe psychological pain required
4   to state an Eighth Amendment claim." Id. at 1113. It was further determined that the officer's
5   "alleged wrongdoing was not objectively harmful enough to establish a constitutional violation…."
6   Id. at 1114 (citations and internal quotation marks omitted).

7   As in Watison, even assuming the truth of the totality of Plaintiff's allegations, the
8   circumstances present in this case, are not objectively harmful to give rise to a constitutional violation.
9   Defendant's evidence demonstrates that the January 28, 2013, search of Plaintiff was one of many
10  unclothed searches of inmates that Marmolejo conducted that day, in accordance with his job duty to
11  check for contraband. There is no dispute that mandatory strip searches of inmates are mandated by
12  law, and every inmate is subject to strip search when ordered by a correctional officer. There is also
13  no dispute that a proper contraband search requires the squat-and-cough procedure and the inmate
14  must spread his buttocks to allow for visual inspection of the inmate's back, buttocks, thighs, toes, and
15  bottom of the feet. Although Plaintiff contends that Marmolejo touched his back, the touching was not
16  inappropriate as it was done to facilitate the legitimate search and was minimal in nature. See, e.g.,
17  Palmer v. O'Connor, No. 2:11-cv-02927 KJN P, 2013 WL 1326207, at *4 (E.D. Cal. Mar. 29, 2013)
18  ("Inmate sexual harassment claims that allege brief inappropriate touching by a correctional official
19  are generally found to be noncognizable, particularly if the alleged touching occurred pursuant to an
20  authorized search."); Johnson v. Carroll, No. 2:08-cv-1494 KJN P, 2012 WL 2069561, at *29 (E.D.
21  Cal. June 7, 2012) (same); see also Berryhill v. Schriro, 137 F.3d 1073, 1076 (8th Cir. 1998) (no
22  Eighth Amendment violation where employees briefly touched inmate's buttocks with apparent intent
23  to embarrass him). There was a legitimate reason for the length of the search, because Plaintiff failed
24  to properly perform the squat-and-cough procedure (to which Plaintiff does not deny and
25  acknowledges that Defendant Marmolejo informed him it was not performed correctly), and the search
26  was an isolated and brief incident that took place on one single day.

27  Viewing the evidence in the light most favorable to Plaintiff, the evidence establishes only that
28  Defendant Marmolejo allegedly touched Plaintiff on the back to facilitate the squat-and-cough

procedure, and made four derogatory comments to Plaintiff. Plaintiff does not dispute the fact that Defendant Marmolejo touched his back to facilitate the squat-and-cough procedure, which indisputably served a legitimate basis, and such limited and justified touching coupled with Plaintiff's allegations that Defendant Marmolejo verbally harassed him is insufficient to state an Eighth Amendment violation. Based on the circumstances and evidence presented in this case, Defendant's motion for summary judgment should be granted.[3]

## IV.
## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendant's motion to strike Plaintiff's filing of sure-reply be DENIED; and
2. Defendant's motion for summary judgment be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 3, 2016**

UNITED STATES MAGISTRATE JUDGE

---

[3] Because the Court finds that Defendant is entitled to summary judgment on the underlying Eighth Amendment claim, the Court need not and will not address entitlement to qualified immunity.